Filed 7/16/26  Marriage of Angela M. and Jeanne B. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of LINO and JEANNE B. | 2d Civ. No. B338128 (Super. Ct. No. 14FL-0681) (San Luis Obispo County) |
| ANGELA M., Respondent, v. JEANNE B., Appellant. | PUBLIC - REDACTED VERSION OF OPINION Redacts material from sealed records.  (Cal. Rules of Court, rules 8.45, 8.46(f)(1) and (f)(2).[1]) |

In this marital dissolution action, Jeanne B. appeals a postjudgment order modifying spousal and child support.

---

[1] This case involves material from a sealed record.  In accordance with the California Rules of Court, rules 8.46(f)(1) and (f)(2), we have prepared both public (redacted) and sealed (unredacted) versions of this opinion. We hereby order the unredacted version of this opinion sealed.

Appellant's former spouse, Lino B. (Lino), died in March 2025 after a long battle with cancer. On June 2, 2025, we granted the motion of Lino's subsequent spouse, Angela M., to substitute herself as respondent in place of Lino.

After the marriage of Lino B. and appellant was dissolved, appellant's mother (mother) provided substantial sums of money to appellant. Appellant and mother claimed the money had been loaned to appellant. The trial court ruled, "The money given to [appellant] by [mother] in the years between 2018 and 2024 were not loans, but regular, recurring gifts, and as such the funds are [appellant's] non-taxable income" for the purpose of calculating support.

Appellant meritoriously contends the court's ruling was erroneous. She argues that it "resulted in an order which, rather than award [her] the substantial back spousal support Lino owed, resulted in an onerous retroactive child support [award] which [she] now ostensibly owes Lino."

We reverse. Although substantial evidence supports the trial court's finding that the purported loans were actually gifts, these gifts were not income to appellant because they were "outside 'the traditional concept of income as a recurrent, monetary benefit.' " (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1314 (*Williamson*).) The gifts "were irregular" (*ibid.*) and "tied to a specific expense." (*Anna M. v. Jeffrey E.* (2017) 7 Cal.App.5th 439, 455 (*Anna M.*).)

In addition, the trial court's ruling was inequitable in view of appellant's dire financial situation. The trial court ruling required her to pay a huge sum of back child support that she could not possibly pay. She would never be able to pay unless her mother gave her additional money.

2

*Factual and Procedural Background*

Appellant and Lino married in 2004 and separated in 2014. They had two children. In August 2016 a judgment was entered dissolving their marriage. Lino testified, "[H]e had exclusive and sole custody of the parties' two minor children throughout the relevant [time] period of []October 25, 2018, to the present []." The trial court found, "[Appellant] has had zero percent custody of the children since July of 2015."

In October 2019 Lino filed a Request for Order modifying child and spousal support. In August 2022 appellant filed against Lino an Order to Show Cause re: Contempt. Appellant claimed Lino owed her $97,343.47 in back spousal support. In an Income and Expense Declaration filed in June 2023, appellant said she owed mother $1,866,905.

A court trial was conducted in February and March 2024. The court found that from 2018 to 2024 mother allegedly had made loans to appellant as evidenced by promissory notes. The trial court ruled that the loans were actually gifts. The court characterized "as non-taxable income to [appellant] . . . the annual funds received from [mother] for each year starting in 2019 set forth as follows:

2019: $78,228.00
2020: $142,560.00
2021: $432,948.00
2022: $92,304.00
2023: $766,970.00
2024: $4,750.00[.]"

The 2024-dollar figure is not for the entire year. The figure appears in the trial court's statement of decision, which was filed

3

on May 14, 2024.  The statement of decision does not indicate the cut-off date for the 2024 expenses.

Based on the above non-taxable income of appellant, the court ordered her to pay Lino the following *monthly* child support retroactive to November 1, 2019:

> 11/1/19 - 12/31/19: $1,712
> 1/1/20 - 12/31/20:  $3,211
> 1/1/21 - 12/31/21:  $7,720
> 1/1/22 - 12/31/22:  $1,792
> 1/1/23 - 10/31/23:  $13,233
> 11/1/23 - 12/31/23: $8,260

Starting January 1, 2024, the trial court ordered appellant to pay monthly child support of $765.  The court ordered each party to pay one-half "of all unreimbursed health care expenses" for the children from November 1, 2019 through December 31, 2023.

The court found: "As of 2019, [appellant] had a reduced need for spousal support and after December of 2020, she had no need for spousal support as she received non-taxable income that well exceeded the marital standard of living."  Beginning January 1, 2021, the court terminated spousal support.

The court allowed appellant to "move forward on her request for child and spousal support arrears from August 1, 2016 going forward."  It rejected "Lino's argument that [appellant] should not be entitled to child and spousal support arrears due to the Doctrine of Laches."

4

*Motion to Dismiss Appeal Because It Was Taken*
*from the Nonappealable Statement of Decision*

On May 28, 2024, appellant filed a notice of appeal from the trial court's Final Statement of Decision, which was filed on May 14, 2024. On July 16, 2024, the trial court filed its "Findings and Order after Hearing" (the Order). The Final Statement of Decision was attached to the Order and incorporated therein by reference. Appellant did not file a notice of appeal from the Order.

"[A] statement of decision is not treated as appealable when a formal order or judgment does follow, as in this case." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) Respondent has moved to dismiss the appeal because it was taken from the nonappealable Final Statement of Decision and the time has expired for taking an appeal from the appealable Order.

"We have authority to treat [appellant's] notice of appeal as if it had been timely filed. 'The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment.' (Cal. Rules of Court, rule 8.104(d)(2).)[2] . . . '[T]here is a well recognized policy in favor of resolving appeals on their merits . . . .' [Citation.] In the present case, [appellant] had the right to appeal from the [July 16, 2024 Order] . . . . [Citations.] . . . Further, [respondent] does not assert any prejudice resulting from [appellant's] premature appeal. Under these circumstances, we will exercise our discretion to deem [appellant's] appeal . . . as having been [timely] taken from the subsequent [Order] entered [on July 16, 2024]." (*In re*

---

[2] All references to rules are to the California Rules of Court.

5

*Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 420; see also rule 8.100(a)(2) ["The notice of appeal must be liberally construed"]; *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 375 ["In exercising our discretion, we liberally construe a premature notice of appeal in favor of its sufficiency"].)

In her reply to appellant's opposition to the motion to dismiss, respondent raises an issue that was not raised in her motion to dismiss.[3]  Respondent claims the appeal "must be dismissed as [appellant] took it from a bifurcated decision and did not seek a certificate of probable cause."  (Bold and capitalization omitted.)  The claim is forfeited because respondent did not raise it in her motion to dismiss.  " 'We will not ordinarily consider issues raised for the first time in a reply brief. . . .' " (*In re Marriage of Cohen* (2023) 89 Cal.App.5th 574, 583.)

The claim is also forfeited for failure to support it with meaningful legal analysis, citations to pertinent authority, and citations to facts in the record on appeal.  (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942-943 (*Fernandes*) ["a brief must contain ' "meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error" ' and contain adequate record citations, or else we will deem all points 'to be forfeited as unsupported by "adequate factual or legal analysis" ' "].)

---

[3] Respondent acknowledges that the California Rules of Court "do not provide for replies."  (See rule 8.54(a).)

*Motion to Dismiss Appeal as Moot*
*Under the Disentitlement Doctrine*

On August 6, 2024, respondent filed a motion entitled, "Motion to Dismiss Appeal as Moot for Disentitlement." On October 10, 2025, respondent's counsel wrote a letter to this court in which he stated, "[I]t would appear the motion for disentitlement is now moot." Accordingly, respondent's motion is denied.

*Motion for Judicial Notice*

On September 10, 2024, appellant filed a motion for judicial notice of documents that "are related to the determination[] of the [disentitlement] doctrine's application." Since respondent's "Motion to Dismiss Appeal as Moot for Disentitlement" is now moot, appellant's motion for judicial notice is denied.

*Claim Appellant Waived All Arguments Because in*
*Notice Designating Record on Appeal She Failed*
*to State Points She Intended to Raise on Appeal*

In her Notice Designating Record on Appeal (Notice), appellant said she would proceed by way of a settled statement because the oral proceedings had not been reported by a court reporter. (Rule 8.137(b)(1)(A).) In item 6 of the Notice, appellant requested that the settled statement include the testimony of herself, Lino, and mother. Appellant checked a box stating that their testimony does "not include all of the testimony in the superior court."

In the Notice appellant did not state the points she intended to raise on appeal. Therefore, respondent claims appellant waived all of her arguments on appeal. Rule 8.130(a)(2) provides, "If the appellant designates less than all the testimony, the notice must state the points to be raised on appeal;

7

the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise."

Appellant asserts, "Respondent's waiver argument . . . must be rejected because it is apparent the incorrect box was checked . . . ." We agree. According to the settled statement, three witnesses testified at the trial: appellant, Lino, and mother. The Settled Statement says it "consists of a condensed factual summary of the evidence and testimony of each witness from the trial."

-------------[REDACTED]-----------------------------------------
-----------------------------------------------------------------------
-----------------------------------------------------------------------
-----------------------------------------------------------------------
-----------------------------------------------------------------------
-----------------------------------------

Accordingly, we reject respondent's waiver argument. We also reject his contention that the "Settled Statement . . . is fatally incomplete."

*Respondent Is Not Collaterally Estopped from Claiming that Funds Received from Mother Were Income to Appellant*

"Collateral estoppel is an aspect of res judicata. [Citation.] . . . [R]es judicata 'precludes parties or their privies from relitigating a *cause of action,*' and in this sense 'has traditionally been referred to as . . . "claim preclusion." ' [Citation.] [¶] . . . '[R]es judicata also includes a broader principle . . . commonly referred to as "collateral estoppel" or "issue preclusion." Under this principle an *issue* necessarily decided in prior litigation may be conclusively determined as against the parties or their privies in a subsequent lawsuit on a different cause of action.' [Citation.] [¶] . . . ' "Collateral estoppel applies

8

when (1) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication, (2) there was a final judgment on the merits in the prior action and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated." ' " (*Patel v. Crown Diamonds, Inc.* (2016) 247 Cal.App.4th 29, 39.)

Appellant contends respondent is collaterally estopped from claiming the funds provided by mother were not loans but instead were income to appellant. --------------------[REDACTED--------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
--------

----------------[REDACTED]----------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
-------.[4]  ------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
--------------------------------------------------------
---------------[REDACTED] ----------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
---------------------

---

[4] All statutory references are to the Family Code.

------------[REDACTED] -------------------------------------------------

----------[REDACTED] --------------------------------------------------

----------[REDACTED]--------------------------------------------------

10

-------------[REDACTED]------------------------------------------

----------------------------------

Finally, appellant asserts that respondent is collaterally estopped because Lino did not litigate appellant's claim in her March 2018 Income and Expense Declaration that she was indebted to mother in the amount of $296,621.47. Appellant contends, "Because Lino did not litigate this claim in 2018 when the claim became apparent, he was estopped from doing so in 2022 and 2024." The contention is forfeited because it is not supported by meaningful legal analysis with citation to pertinent authority and facts in the record on appeal. (*Fernandes, supra,* 16 Cal.App.5th at pp. 942-943.)

In any event, appellant has not shown that in 2018 Lino had cause to believe that the alleged loans totaling $296,621.47 were actually gifts. In its statement of decision the trial court

found, "The money given to [appellant] by [mother] in the years preceding and up to 2017 in the amount of $287,306.76 . . . was a loan which was satisfied by the collateralization of [appellant's] . . . property and deferred compensation accounts." On the other hand, the court concluded that "[t]he money given to [appellant] by [mother] in the years between 2018 and 2024 were not loans, but regular, recurring gifts . . . ."

*Relevant Trial Testimony*

<u>Appellant's Testimony</u>

Appellant testified that she was disabled. There is a documented history of this severe disability: ---[REDACTED]------

------------------------------------------------------------------------------------

------------------------------------------------------------------------------------

------------------------------------------------------------------------------------

------------------------------------------------------------------------------------

---------------------------------------------------------------------- She also borrowed money from mother "to help her secure legal counsel in relation to this matter and the case-- [REDACTED]-------------------

---------------------------------------------------, as well as to cover her medical/--[REDACTED]-- expenses, general legal fees, and assist her with living expenses if needed." She obtained a loan from mother for the purpose of providing her "with a vehicle to drive as she was unable to procure a loan on a vehicle without a cosigner."

Appellant had not "made any payments to [mother] after 2016." "[T]he amount of money she owed her mother was in excess of $1,800,000." "[S]he could never pay back the money she received from [mother] in the years between 2018 and 2024." Appellant said, " 'I have nothing.' " "[H]er mother was aware [appellant] could not repay the loans."

12

Appellant "was unemployed and did not have any current income. She . . . had been unemployed throughout 2019, 2020, 2021, and 2022. She . . . had a brief job as a pharmaceutical tech assistant in 2023 with AHMC Healthcare temp Agency, but was let go."

"[F]or 2019, [Lino] should have paid her $42,000.00 in spousal support but only paid her $23,518.82. . . . [I]n 2020, [Lino] should have paid her $42,000 in spousal support pursuant to the Court order filed November 1, 2018, but only paid [her] $1,950.00. . . . [F]or 2021 [Lino] was under a court order to pay her spousal support of $42,000.00 but only paid $600.00. . . . [F]or 2022, [Lino] only made $50.00 monthly payments out of the $3,500 monthly amount owed to her per the September 2016 court order."[5]

In its statement of decision, the trial court stated that appellant's testimony "did not provide this Court with the credible evidence it needs to rule in support of many of her arguments." The court noted: "When she was asked about the multiple promissory notes she signed with her mother, amounting to over $1.8 million of principal and interest, she frequently answered, 'I don't know' or 'I don't recall.' . . . It is the opinion of this Court that any reasonable person would know

---

[5] Lino testified: "[H]e was aware of the September 2016 statement of decision and order directing him to pay [appellant] $3,500 a month in spousal support. . . . [That order] had never been changed and remained in place. . . . [H]e . . . paid the support as ordered until February 2020, when he began paying $50.00 a month in spousal support based on deductions for the children's health care and child support. . . . [T]here was no order authorizing his reduction of payment."

such details regarding transactions of this magnitude and that she was either not being forthright with her testimony or there were no legitimate loans of which to testify."[6]

The trial court credited appellant's testimony that she had " 'nothing' ": "[Appellant], as she testified herself, will never be able to make enough money to pay off $1.8 m[illion] in loans and as she testified, she 'has nothing left' . . . ."

Mother's Testimony

Mother testified: "she had been helping [appellant] financially over the last several years due to her daughter's need for funds to pay for health care costs, legal fees and some living expenses, as needed. . . . [S]he had provided [appellant] with a car under a loan secured by a promissory note." "[S]he had not gifted or loaned money to the parties or her daughter during their marriage."[7]

Mother testified as to various promissory notes signed by appellant "and indicated [they] reflect the monies loaned to her daughter for the periods specified in the notes." "[T]he promissory notes were always signed after the expiration date for the notes. . . . [T]he notes were purposely written so that [appellant] would already be in default and [mother] could collect the debts whenever she wanted to."

Mother "acknowledged that [appellant] had not made a payment [on the promissory notes] since 2016." She "did not

---

[6] We parenthetically observe that there is an obvious alternative: appellant could not recall the transactions because of her disability.

[7] In its statement of decision the trial court found, "[T]he funds [from mother] were received by [appellant] after she separated from Lino and every year since."

14

know whether [appellant] would ever be able to repay all of the money that was owed to her."

In its statement of decision, the trial court said it was skeptical of mother's testimony: "She . . . responded 'I don't know . . .,' or 'I can't remember . . .' to key pieces of information surrounding terms of the [loan] agreements, what the money was spent on, or explaining how [appellant], who has been unemployed for most of the last decade would be able to pay back a $1.8m debt." One obviously false answer by mother "cast a cloud of doubt over the entirety of [her] testimony."

*Trial Court's Findings and*
*Reasoning in Statement of Decision*

In its statement of decision, the trial court concluded the funds provided by mother were not loans because "[n]o informed lender would lend money to someone that had never made a single timely loan payment on a previous loan, did not have a job, and who had no way of ever repaying the loan back."[8]

--------[REDACTED] ------------------------------------------------------
-----------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------
-------------

The court stated: "mother periodically and regularly gave any needed funds directly to [appellant]. [Appellant's] and

---

[8] A mother of a disabled daughter is not an "informed lender."

[mother's] testimony established that for the last seven years, even as late as February 2024, [appellant] received funds to pay for her monthly car lease, monthly rent, monthly living expenses, and litigation fees.  It appears that the large swings in funds were due to the degree of litigation activity.  [¶]  Because of this, and based on the testimony and evidence admitted at trial, the Court will characterize the funds received from [mother] as non-taxable income to [appellant] . . . for each year starting in 2019 . . . ."  "Based on the respective current and historical attorney fee requests, it is a calculated likelihood each party has spent close to a million dollars in legal fees . . . ."

*Decisional Law*

Appellant argues that, even if the funds from mother were gifts, they were not income because they "did not bear a 'reasonable relationship to the traditional concept of income as a recurrent, monetary benefit.' "  "Instead, [mother's] funds, be they loans or gifts, were provided more on an as-needed, irregular basis . . . ."

In *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 736-737 (*Alter*), the court said: "[The] definition [of 'income' in Family Code section 4058] is broad enough to encompass gifts that bear a reasonable relationship to the traditional concept of income as a recurrent, monetary benefit. . . .  [¶]  We conclude that nothing in the law prohibits considering gifts to be income for purposes of child support so long as the gifts bear [such] a reasonable relationship . . . .  [T]he question of whether gifts should be considered income for purposes of the child support calculation is one that must be left to the discretion of the trial court."  (See also *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 647 ["The court did not abuse its discretion by considering . . . gifts [from

16

father] to be support (or income) for purposes of calculating Lauren's ability to pay her attorney fees. The gifts were 'periodic and regular' and bore 'a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit' "].)

In *Alter* the husband "argue[d] that the trial court abused its discretion by considering as income the $6,000 his mother gave him every month." (*Alter*, *supra*, 171 Cal.App.4th at p. 722.) The court concluded, "[Husband] has been receiving regular cash payments from his mother for over a decade. The periodic and regular nature of the payments means that the money is available to [husband] for the support of his children." (*Id.*, at p. 737.)

In *Williamson*, *supra*, 226 Cal.App.4th at p. 1307, this court upheld the trial court's exercise of its discretion to "declin[e] to treat historical cash advances from Frederick's parents as income in calculating child and spousal support." We explained: "[A]side from the annual $26,000 tax-free gifts and the one-time $900,000 gift in 2000, the cash advances from Frederick's parents were made upon request, depending upon the family's needs. As Mary Kate explained, 'Everybody in the family just gets money when they need it.' In some years, Frederick and Mary Kate needed large sums of cash, primarily to purchase and renovate homes. In other years, they requested little or no assistance. In that sense, the advances were irregular and outside 'the traditional concept of income as a recurrent, monetary benefit.' " (*Id.*, at p. 1314.)

Finally, in *Anna M.*, *supra*, 7 Cal.App.5th at p. 452, the court stated: "[L]egal authorities . . . indicate regular, recurrent gifts to a parent may be characterized as income to that parent for purposes of calculating guideline child support, but they do

17

not indicate gifts *must* be so characterized in every case. Instead, the trial court has discretion to consider gifts as income when they are a regular, recurrent monetary benefit to the parent. Further, courts are mindful not to base a child support calculation on monies a parent does not actually have." The court continued, "It is reasonable for a court to conclude a grandparent's monthly gifts to a parent, *in the same amount, not tied to a specific expense*, and continuing for years, are regular enough to be characterized as income to that parent and are funds available to pay child support." (*Id.*, at p. 455, italics added.)

The court "conclude[d] the evidence was sufficient for the trial court to reasonably conclude the financial support Davis [the godfather of Anna's child] provides Anna does not represent a regular, recurrent monetary benefit fairly representing income for purposes of calculating the child support award." (*Anna M.*, *supra*, 7 Cal.App.5th at p. 455.) The court explained, "A reasonable interpretation of the evidence is that Davis's support of Anna resembles the gifts provided to the obligor father in *Williamson* that were not deemed income: *occurring on an as-needed basis to pay particular expenses*. [Citation.] In contrast, in *Alter*, the obligor's mother had been giving him $6,000, a fixed amount every month for over a decade." (*Id.*, at p. 454-455, italics added; see also *County of San Diego v. P.B.* (2020) 55 Cal.App.5th 1058, 1075-1076 [no abuse of discretion in ruling that grandparents' direct payment of father's attorney's fees did not constitute income to father since "Mother has not established that the payments were made at regular time intervals or in recurring amounts . . . [a]nd the payments were for a specific

18

purpose—Father's attorneys—and are not available to Father for the support of Child"].)

*Standard of Review*

As the above cases indicate, the applicable standard of review is abuse of discretion. " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' 'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) "A trial court's decision is an abuse of discretion if it is based on an error of law [citations] or if the court's factual findings are not supported by substantial evidence [citation]." (*Shapell SoCal Rental Properties, LLC v. Chico's FAS, Inc.* (2022) 85 Cal.App.5th 198, 213.)

*Substantial Evidence Supports Trial Court's Factual Finding that Purported Loans to Appellant Were Actually Gifts*

"The question whether a transfer of funds was a gift or a loan often presents questions of fact, and this case is no different. The question depends principally upon [mother's] intent at the time [s]he advanced the funds to [appellant] . . . ." (*Burkle v. Burkle* (2006) 141 Cal.App.4th 1029, 1036.)

In her appellate briefs appellant does not claim that there is no substantial evidence in support of the trial court's finding that the funds provided by mother were gifts instead of loans. Accordingly, appellant has forfeited this issue. (*Rodriguez v. E.M.E., Inc.* (2016) 246 Cal.App.4th 1027, 1033.) In any event,

19

there is ample substantial evidence in support of the court's finding.  (See *Alter, supra*, 171 Cal.App.4th at p. 731.)

*The Trial Court Abused Its Discretion in Ruling*
*that the Gifts Received by Appellant from 2019*
*through 2023 Were Income Available for Support*

The relevant case law makes clear that, in order for gifts to a parent to constitute income available for support, the gifts must be "a regular, recurrent monetary benefit to the parent."  (*Anna M, supra*, 7 Cal.App.5th at p. 452.)  The gifts here were not regular.  Based on the trial court's calculation of the annual gifts, they were highly irregular:

> 2019: $78,228.00
> 2020: $142,560.00
> 2021: $432,948.00
> 2022: $92,304.00
> 2023: $766,970.00

The 2023 gifts were more than eight times greater than the 2022 gifts and almost 10 times greater than the 2019 gifts.  The trial court said: "[M]other periodically and regularly gave any *needed* funds directly to [appellant]. . . .  It appears that the large swings in funds were due to the degree of litigation activity." (Italics added.)  The facts here are a far cry from *Alter*, where for years the mother gave her son $6,000 every month.  In our view mother's gifts to appellant were "regular."

This dispute is ruled by the *Williamson* rationale: "[T]he cash advances from Frederick's parents were made upon request, depending upon the family's *needs* [which varied from year to year]. . . .  In that sense, the advances were irregular and outside 'the traditional concept of income as a recurrent, monetary benefit.'"  (*Williamson, supra*, 226 Cal.App.4th at p. 1314, italics

20

added.)  "A reasonable interpretation of the evidence is that [mother's] support of [appellant] resembles the gifts provided to the obligor father in *Williamson* that were not deemed income: occurring on an *as-needed basis to pay particular expenses.* [Citation.]"  (*Anna M.*, *supra*, 7 Cal.App.5th at pp. 454-455., italics added.)  The trial court erred in ruling that mother's irregular gifts to appellant depending upon her needs, constituted income available for support.

*Family Law Equity Rules*

Moreover, the trial court abused its discretion because its ruling was manifestly inequitable.  It ordered appellant to pay huge sums of money that she did not have and would never have unless mother gave her the money.  "[C]ourts are mindful not to base a child support calculation on monies a parent does not actually have."  (*Anna M.*, *supra*, 7 Cal.App.5th at p. 452.) Mother had no duty to support her grandchildren.  "Generous relatives do not have a duty to support a family member's minor children."  (*Williamson, supra*, 226 Cal.App.4th at p. 1315.)

" 'Family law cases "are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity.  [Citation.]" ' "  (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175; see also *Greiner v. Keller* (2019) 36 Cal.App.5th 332, 339 [" '[T]he court in child support proceedings, to the extent permitted by the child support statutes, must be permitted to exercise the broadest possible discretion in order to achieve equity and fairness in these most sensitive and emotional cases' "]; *In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043 ["the court, in child support cases, is not just supposed to punch numbers into a computer and award the parties the computer's result without considering circumstances

in a particular case which would make that order unjust or inequitable"]; see also *In re Marriage of Bowman* (2026) 119 Cal.App.5th 922.)

*Disposition*

The postjudgment order filed on July 16, 2024, is reversed. The matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.  Appellant shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

Erin M. Childs, Judge

Superior Court County of San Luis Obispo

_____

John L. Dodd & Associates and John L. Dodd; Jarrette & Walmsley and Robert R. Walmsley, for Appellant.

Dennis Temko, for Respondent.